**In the Matter of WILLISTON OIL CORP., Debtor.**

**In the Matter of Joseph J. TERRITO, Debtor.**

**Bankruptcy Nos. 83–04116, 83–06072.**

United States Bankruptcy Court, D. New Jersey.

Sept. 26, 1984.

Mary Ann W. Collins, Kleinberg, Moroney, Masterson & Schacter, Millburn, N.J., for debtor.

William J. Brown, Atty. Gen., State of Ohio, Columbus, Ohio, for State of Ohio.

## OPINION and ORDER

D. JOSEPH DeVITO, Bankruptcy Judge.

The above debtors move to enforce the automatic stay to enjoin the State of Ohio from continuing a state action instituted after the debtors filed their Chapter 11 petitions. Debtors move pursuant to § 362 of the Bankruptcy Code or, in the alternative, pursuant to the Court's equitable powers under § 105. In addition, in the event that enforcement of the automatic stay is denied, debtors seek transfer of the Ohio state action to this Court. Ohio asserts, *inter alia*, that the continuation of the state action is not stayed by reason of the governmental exceptions contained in § 362[b][4] and [5]. The precise issue to be decided is whether the State of Ohio's action against the debtors falls within the noted exemptions.

The relevant underlying facts and procedural history may be summarized as follows. On July 11, 1983, an involuntary Chapter 7 petition was filed against Williston Oil Corporation (Williston) in the District of New Jersey. The following day, Williston filed a Chapter 11 petition in the Southern District of Ohio, thereafter transferred to the District of New Jersey. Williston presently operates as a debtor in possession.

On August 22, 1983, the Ohio Department of Natural Resources, Division of Oil and Gas, issued order number 83–56 instructing Williston to either properly plug and abandon, or put into production, approximately 238 wells located in several eastern Ohio counties. That order, however, was not received by Williston until some three weeks later, specifically, on September 19, 1983.

Joseph J. Territo (Territo), president of Williston, filed a Chapter 11 petition in the Bankruptcy Court for the District of New Jersey on October 21, 1983. On April 25, 1984, the State of Ohio filed a complaint in Muskingum County Court, with Territo and Williston the named defendants. In that action, Ohio sought injunctive relief and the assessment of civil penalties, alleging that Territo and Williston failed to comply with order number 83–56, as well as failing to restore a well site called Swartz No. 1, designated Permit Number 6516. On June 20, 1984, the debtors, maintaining that the continuation of this Ohio state court action was in violation of the automatic stay, filed the within motion.

The relevant section of the automatic stay provisions of the Bankruptcy Code, § 362[b][4], provides, in pertinent part:

[b] The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5[a][3] of the Securities Investor Protection Act of 1970 (15 U.S.C. 78eee[a][3]), does not operate as a stay—

[4] under subsection [a][1] of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

[5] under subsection [a][2] of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

Debtors argue that under the cited paragraphs, the government may continue an action against a debtor only when it involves the correction of a health or safety problem. The legislative history supporting the pertinent exceptions includes debtors' contention and further explains:

Paragraph [4] excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory powers. Thus, where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay. Paragraph [5] makes clear that the exception extends to permit an

injunction and enforcement of an injunction, and to permit the entry of a money judgment, but does not extend to permit enforcement of a money judgment. Since the assets of the debtor are in the possession and control of the bankruptcy court, and since they constitute a fund out of which all creditors are entitled to share, enforcement by a governmental unit of a money judgment would give it preferential treatment to the detriment of all other creditors.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. (1977); S.Rep. 95–989, 95th Cong., 2d Sess. (1978), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5838, 6299, *reprinted in* 2 and 3 *Collier on Bankruptcy* (Legislative History) 15th ed. (1984).

Decisional law interpreting § 362[b][4] and [5] has emphasized that the state's power to enforce its police and regulatory powers concerning the protection of the public's health, safety, and welfare, necessarily includes the state's attempts to force debtors to rectify harmful environmental hazards. *Penn Terra Ltd. v. Department of Environmental Resources*, 733 F.2d 267, 274 (3d Cir.1984). *See also Donovan v. LaPorta* (In re LaPorta), 26 B.R. 687 (Bankr.N.D.Ill.1982) (enforcement of labor law); *Donovan v. TMC Industries Ltd.*, 20 B.R. 997 (N.D.Ga.1982) (enforcement of labor law).

Ohio argues that the complaint was filed pursuant to Ohio's Oil and Gas laws, enacted to protect the state's environment and natural resources from improper and harmful oil and gas production practices. Ohio explains, "[u]nplugged wells may create safety hazards, hinder the recovery of available hydrocarbons by diminishing subsurface pressure and, most alarmingly, threaten the State of Ohio's fresh water supply." Memorandum in Opposition to Debtor's Motion, Attorney General of Ohio, p. 11.

■ The Court is satisfied that the State of Ohio's state court proceeding is excepted from the automatic stay pursuant to the exceptions noted in § 362[b][4] and [5], allowing the government to enforce its police or regulatory power, and finds that the State of Ohio may continue its attempt to obtain an injunction, as well as entry of a money judgment. Enforcement of the injunction would be allowed; however, enforcement of a money judgment is impermissible.

■ The Court now considers whether it should, as requested by the debtors, enter an order directing the State of Ohio to proceed with its state court action in this Court. Debtors argue that, under the Court's equitable powers set forth in § 105, the State of Ohio should be restrained from proceeding in any court other than this bankruptcy court. Section 105 states, in pertinent part: "The bankruptcy court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

Maintaining that they are without adequate monetary resources to defend the action in Ohio, and that they do not exercise control over many of the wells allegedly in violation of that state's laws, debtors seek an order pursuant to § 105 enjoining continuation of the proceedings in the Ohio state court. Although this Court acknowledges its authority to issue such an injunction, the requested equitable relief is denied because of debtors' failure to make the requisite showing on both procedural and substantive grounds.

Bankruptcy Rule 7001[7] states that a proceeding to obtain an injunction or other equitable relief must be commenced by filing an adversary proceeding. In seeking injunctive relief, debtors chose, instead, to file a motion in the main case. Of greater significance is debtors' failure to make the requisite showing for the issuance of an injunction: irreparable injury and likelihood of prevailing on the merits. *Wyrough & Loser, Inc. v. Pelmor Laboratories, Inc.*, 376 F.2d 543 (3d Cir.1967). Though not in the context of a bankruptcy case, the Supreme Court has noted: "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *Renegotiation Board v. Banner-*

*craft Clothing Co.,* 415 U.S. 1, 24, 94 S.Ct. 1028, 1040, 39 L.Ed.2d 123 (1974).

Debtors' attempts to show a likelihood of prevailing on the merits by explaining that they are not in control of a number of wells alleged to be in violation of Ohio state law, is of little persuasion. Control of the wells complained of appears to be neither relevant nor decisive. Upon the affidavit of Shirley L. Dorn, examiner of the Surety Section, Ohio Department of Natural Resources, it appears that Williston held 233 permits as of July 25, 1984, among which are those relating to the wells in question. Section 1509.33 of the Ohio Revised Code provides, in pertinent part:

> Any person who violates sections 1509.01 to 1509.31 ... or any rules adopted or orders or terms or conditions of a permit issued pursuant to these sections shall pay a civil penalty of not more than two thousand dollars for each offense.

The complaint filed by the State of Ohio against the debtors for the assessment of civil penalties for violations of an outstanding administrative order appears, as argued by Ohio, to be "part of the State of Ohio's enforcement scheme to insure compliance with its environmental laws pertaining to the oil and gas industry." Absent further exculpatory explanation, the responsibility of compliance rests with the holder of the permits.

In the existing circumstances, this Court deems the Ohio state court better suited for deciding whether a violation of the laws in question has occurred. By reason of all of the foregoing, the debtors' requested relief is denied in its entirety.

It is so ordered.