In re Clarence JAMES, Debtor.

Eugene A. JABLINSKI, Trustee in Bankruptcy, Plaintiff,

v.

Clarence JAMES, Defendant.

Bankruptcy No. 3–85–02861.
Adv. No. 3–86–0187.

United States Bankruptcy Court,
S.D. Ohio, W.D.

July 31, 1987.

Eugene A. Jablinski, trustee, Dayton, Ohio, pro se.

Lloyd D. Cohen, Dayton, Ohio, for debtor.

Clarence James, Dayton, Ohio, pro se.

### DECISION AND JUDGMENT DENYING DISCHARGE

WILLIAM A. CLARK, Bankruptcy Judge.

This matter came before the court upon the complaint of the trustee for denial of the discharge for the debtor's failure to cooperate with the trustee in furnishing

information required to make a determination as to assets of the debtor. The original complaint was filed September 9, 1986 and amended on October 9, 1986 to demand revocation of the discharge granted on April 17, 1986.

The facts reveal that at the hearing under section 341 the trustee obtained information leading him to seek further information about the possible preference or nondisclosure of assets by the debtor.

The debtor filed for bankruptcy on December 31, 1985. He lost his job with the University of California in June, 1985 when the employer's contract with the Air Force was terminated. In September, 1985 debtor made a deposit of $10,275 at Wright-Patt Credit Union, Inc. from money which had been withheld from his wages by his former employer. Debtor had only a vague recollection as to what happened to the money in his Wright-Patt Credit Union checking account after the deposit. The trustee requested copies of all cancelled checks which the debtor was unable to furnish asserting that the credit union does not return cancelled checks written on the account to the depositor. Instead, for a fee of $3.00 per copy, the credit union supplies copies of cancelled checks. The debtor claimed he had no disposable income to pay such expense. The debtor also had not retained his check register in his personal records. He furnished bank statements without the cancelled checks to the trustee.

At the hearing the trustee introduced eight (8) checks, which he had subpoenaed from all checks over $100 written by the debtor for the period from September 10, 1985 to December 31, 1985. The trustee established that the debtor withdrew from the checking account and deposited $4,000 into a savings account in the name of his mother at First National Bank. The debtor had no knowledge of the amount in the account on the date of filing his bankruptcy petition on December 31, 1985. The debtor contended he was "paying back" and paying his mother in advance for helping him with meals after he became unemployed in June of 1985. He also obtained money from his mother from the savings account

during the fall of 1985. Debtor further contended he established the savings account for his mother for the meals and other ways she helped him to "pay her back for what she had done for him." The debtor had used most of the money in the account as of the date of the hearing, June 11, 1987, but did not know the balance remaining.

The checks from the Wright-Patt Credit Union account totaled approximately $8,000, of which $4,000 went to the First National Bank account of his mother. The balance was partially accounted for as follows: over $1,200 to Maharg Realty as payments on the mortgage for his condominium apartment, small payments to credit card companies, Capital Savings & Loan, Third National Bank, and Bank One, Dayton, as payments on credit card accounts. The debtor speculated that there may have been some money remaining in his mother's savings account at the time debtor filed for bankruptcy relief.

The debtor remained unemployed until September, 1986 when he obtained employment earning $3.75 per hour and $144 per week. During the period debtor was without regular employment he took odd jobs for living expenses but fell in arrears on his mortgage payment.

The trustee argues that debtor's refusal or unwillingness to provide discovery information delayed the trustee's administration of the estate and prevented the trustee from recovering the money in the First National Bank account in the name of the mother. Only by subpoenaing the checks did the trustee learn of the bank account transaction.

The debtor used funds from the $4,000 transfer to his mother for his own benefit throughout the period of the administration of the bankruptcy estate. The debtor's transfer to his mother may have been an informal trust wherein the debtor placed his money in the hands of his mother to avoid discovery and attachment by his creditors.

The debtor's Statement of Affairs filed with his petition on December 31, 1985 contains the following representations:

5. Books and records.

a. Have you kept books of account or records relating to your affairs within the 2 years immediately preceding the filing of the original petition herein? **No**

\* \* \* \* \* \*

c. If any of these books or records are not available, explain. **Don't keep**

d. Have any books of account or records relating to your affairs been destroyed, lost, or otherwise disposed of within the 2 years immediately preceding the filing of the original petition herein? **No**

\* \* \* \* \* \*

9. Property in hands of third person.

Is any other person holding anything of value in which you have an interest? (Give name and address, location and description of the property, and circumstances of the holding.) **No**

\* \* \* \* \* \*

11. Loans repaid.

What repayments on loans in whole or in part have you made during the year immediately preceding the filing of the original petition herein? (Give the name and address of the lender, the amount of the loan and when received, the amounts and dates of payments and, if the lender is a relative or insider, the relationship.) **None**

12. Transfers of property.

Have you made any gifts, other than ordinary and usual presents to family members and charitable donations, during the year immediately preceding the filing of the original petition herein? (If so, give names and addresses of donees and dates, description, and value of gifts.) **No**

## CONCLUSIONS OF LAW

The relevant Bankruptcy Code Section is 11 U.S.C. § 727(d) wherein is stated as follows:

Sec. 727. Discharge

(a) The court shall grant the debtor a discharge, unless—

\* \* \* \* \* \*

(d) On request of the trustee or a creditor, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—

(1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge.

The debtor is required under 11 U.S.C. § 521 to perform certain duties. At 11 U.S.C. § 521(3) it is stated:

Sec. 521. Debtor's duties.

(3) if a trustee is serving in the case, cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title; Sec. 11 U.S.C. §§ 101 et seq.

In applying the facts of this case, it is evident that the debtor failed to disclose the transfer of $4,000 to an account which he established in his mother's name at First National Bank. From his testimony it is unclear whether the money was to repay his mother for meals she had provided for him after his loss of job three months before, and for meals she would provide in the future, or whether the funds were for his use during the period until he obtained employment. He testified he was not repaying a loan made by his mother. Whether the transfer was as a gift to repay his mother for her kindnesses to him, or was property to be held by her until he needed it during his unemployment period, the answers to his Statement of Affairs questions disclosed nothing to identify the transaction. The debtor must be accountable for the omission in his Statement of Affairs. There he failed to disclose important information. The debtor also, in the Statement of Affairs, denied he destroyed or disposed of his books of account, yet he had disposed of his check register. Debtor's actions in delaying the trustee's inquiry and request for information on the checking account effectively prevented the trustee from discovering the September transfer of the $4,000 to his mother until after his discharge was obtained.

The requirements for proof of fraud are proof by clear and convincing evidence of the following:

1. False representation
2. Intent to deceive
3. Material fact
4. Reasonable reliance
5. Detriment

In the instant case the debtor failed to disclose, in any of his schedules, the transfer to his mother. That failure was a concealment of a material fact which prevented the trustee from performing his duty to administer the estate effectively and prop-

erly. Those circumstances satisfy the elements of reasonable reliance and detriment. The only fraud element to be considered further is the "intent to deceive." The element of intent to deceive is the most difficult to prove of any of the elements of fraud. Proof of the intent must be gained from a full consideration of all the circumstances.

The debtor knew there was some money available in the checking account in his mother's name to which he had access at the time he filed his petition. He was unable to state the amount of money in the account at the filing or at the time of the hearing. However, he knew of the existence of the account and had placed it beyond the reach of his creditors but available for his use by a mere request to his mother. These facts, combined with his failure to report the account in any manner in his Statement of Affairs, is concealment of material information and supports a finding that there was an intent to deceive.

The bankruptcy process is, and must be, based upon honesty and integrity on the part of debtors and creditors. The honest debtor is entitled to bankruptcy relief. A debtor who fails to reveal all of his assets has failed to show the good faith required to obtain the protection that bankruptcy affords.

Because of the debtors' misrepresentations and concealment, the trustee could not have opposed the discharge before it was granted. *Wendel, Trustee v. Daugherty*, 14 B.R. 1, 2 (Bankr.S.D.Fla. 1981).

The court holds that this debtor has concealed assets which were available to him or transferred those assets to another, placing them beyond the reach of creditors. He delayed the trustee from learning of the concealment until after his discharge was issued.

In a case involving similar nondisclosure by a debtor, the court held such action warranted the revocation of the discharge. *Wendel, Trustee v. Daugherty*, supra.

After the trustee requested debtor's bank checks the debtor delayed in responding, claiming the case of obtaining check copies was beyond his means for all the checks. He then failed to comply with the more limited request for production of all checks exceeding $100. By the debtor's refusal, the trustee was prevented from obtaining the check copies until he subpoenaed them for the trial. Only at the trial was the information made available to the trustee. The debtor delayed the proper administration of the estate in violation of his duty to cooperate with the trustee as required by 11 U.S.C. § 521.

The court cannot condone such action and permit the debtor to have the relief provided by a discharge in bankruptcy. The debtor may not have the benefit of his failure to cooperate with the requests of the trustee. The debtor's delay prevented the trustee from properly administering the estate by either recovering a preferential transfer or recovering assets of the estate in the hands of a third person. The facts proved by the trustee require a finding that under 11 U.S.C. § 727(d)(1) and (e), the debtor's discharge must be revoked for fraud.

IT IS, THEREFORE, ORDERED AND ADJUDGED that the discharge granted to Clarence James on April 17, 1986 is REVOKED.

IT IS SO ORDERED.